## Vinson v. Southern Ry. System (two cases).

Oct. 3, 1941.

Lukins & Jones and Ray Stephenson for appellants.

Humphrey & Taylor for appellee.

OPINION OF THE COURT BY JUDGE FULTON—Reversing.

The appellants, Herbert Vinson and Cova Vinson, suffered personal injuries when the automobile in which they were riding was struck by a freight train of the appellee, Southern Railway System, at the point where the railroad crosses Dumesnil Street about two squares west of 28th Street in Louisville. Separate actions were filed by them, which were tried together, and at the conclusion of the testimony for the plaintiffs the trial court directed a verdict for the defendant and this appeal follows.

The appellants were riding westwardly on Dumesnil Street and the flasher lights which are maintained at the crossing were not in operation nor was the watchman, whom the company constantly maintained at the crossing to warn travelers of the approach of trains, at his post of duty. These facts must be assumed, at least, since they were testified to by appellants and there was no evidence to the contrary.

It further appears from appellants' testimony that a train approaching the crossing from the South, as was the train involved in the collision, cannot be seen by persons in an automobile approaching the crossing from the east until a point approximately 20 to 25 feet east of the crossing is reached. At that point a roadway runs southwardly from Dumesnil Street along the

east side of the railroad and it is only when an automobiles arrives at the eastern edge of this roadway that one may look south and see a train approaching.

It is conceded by the appellee company (for the purpose of determining the correctness of the trial court's ruling in directing a verdict) that the appellants' evidence established negligence on the part of the company in that the flasher lights were not working and the watchman was not at the crossing to give warning. This being the case, the trial court's action in directing a verdict may be sustained only on the theory that the evidence introduced for appellants established that they were guilty of contributory negligence as a matter of law.

It is argued most earnestly by the appellee, and this view was evidently adopted by the trial court, that appellants admitted on the trial that they did not look to see if a train was approaching although they could easily have discovered its approach if they had looked. The depositions of the appellants were taken as on cross-examination and on the trial appellants admitted making answers to certain questions in these depositions tending to contradict their testimony given on the trial, these answers being also, of course, substantive evidence to be considered against appellants. Appellee's brief cites many of the answers in the depositions, as well as many answers made by appellants on the trial, which it claims amount to admissions that the appellants did not look to discover the approach of a train until their automobile was actually on the railroad crossing. The cross-examination of the appellants was greatly extended and in numerous instances in their testimony they did give answers which, if literally construed, indicated that they did not look for the approach of a train until the automobile actually made contact with the crossing but a careful consideration of the entire testimony of appellants convinces us that the true meaning intended to be expressed by them was that they did not look until they got near, not on, the crossing. For instance, in the testimony of Mr. Vinson after stating numerous times, in effect, that he did not look until he was right on the track (meaning, we think, near the track) the following question and answer appears:

"Q. You didn't look either North or South along the railroad tracks until you got on the track,

did you? A. Got out almost to the track—you can't see a train until you get almost up on the track.''

In the testimony of Mrs. Vinson, after stating numerous times that she did not look until they got right on the track (evidently, as we think, intending to convey the meaning of right near the track), the following questions and answers appear:

''Q. Well, where were you when you looked the first time? A. Just before we got up on the track; before anybody stops their car.

''Q. How close were you to the track when you looked for the first time, made the first effort to discover the approach of the train? A. Well, I guess it would be 20 or 25 feet from the track.''

The impression to be gathered from the entire testimony of these two witnesses is that they looked for the approach of the train at a point near the crossing which is the only place that any purpose could have been accomplished by looking. It is apparent from the testimony and a photograph filed in evidence that the first point at which the approach of a train from the south could have been discovered was a point on Dumesnil Street about 20 or 25 feet east of the crossing where the roadway turns off from Dumesnil and runs south along the tracks. This point is in common parlance, "right on" the railroad crossing. This expression "right on" is commonly used to express the meaning "near." We think it is apparent that these witnesses did not intend to convey the meaning that they did not look until the automobile actually made contact with the crossing and that the fair import of their testimony as a whole is that they looked when right near the crossing, the only point at which looking would have been of any avail.

While the appellants were not entitled to construe the failure of the watchman to be at the crossing and the failure of the flashing lights to work as an invitation to cross to the extent that they might completely abandon the exercise of ordinary care for their own safety, as we said in Whitney v. L. & N. R. Co., 282 Ky. 392, 138 S. W. (2d) 503, nevertheless such failures were well calculated to diminish the quantum of care considered as ordinary. Assuming that appellants were traveling 12 to 15 miles per hour (as they testified) and that they

looked when they reached the point 20 to 25 feet east of the crossing, the farthest point therefrom at which the train could have been seen (a reasonable conclusion to be drawn from their testimony as we have heretofore indicated), in approximately one second the automobile would have reached the crossing. It may well be doubted that in these circumstances the automobile could have been stopped in time to avoid being struck by the train after its approach was discovered.

We therefore conclude that the evidence did not as a matter of law disclose that appellants were guilty of contributory negligence. The trial court was therefore in error in directing a verdict for appellee.

Judgment reversed with directions to grant the appellants a new trial and for further proceedings not inconsistent with this opinion.